**UNITED STATES v. 1232 CASES AMERICAN BEAUTY BRAND OYSTERS et al.**

**No. 907.**

District Court, W. D. Missouri, W. D.

Feb. 28, 1942.

Maurice M. Milligan, U. S. Dist. Atty., and Otto Schmid, Asst. U. S. Dist. Atty., both of Kansas City, Mo., for plaintiff.

Fred G. Mancuso, of Kansas City, Mo., and R. W. Thompson, of Gulfport, Miss., for defendant.

REEVES, District Judge.

This is a proceeding by the process of libel to condemn an alleged adulterated food product. Such food consists of 1232 cases of oysters, each case containing 24 cans, marked "American Beauty Brand Oysters."

As a basis for condemnation, it is alleged by the government that said article "contains shell fragments, many of them small enough to be swallowed and become lodged in the esophagus, and that said shell fragments are sharp and capable of inflicting injury in the mouth."

The provision of the law invoked by the government is section 342, Title 21 U.S.C. A., and sundry subdivisions thereof. Said section provides, among other things, that:

"A food shall be deemed to be adulterated—

"(a) (1) If it bears or contains any poisonous or deleterious substance which may render it injurious to health; but in case the substance is not an added substance such food shall not be considered adulterated under this clause if the quantity of such substance in such food does not ordinarily render it injurious to health."

The claimant appeared to deny the averments of the libel and assert ownership of the product. The evidence in the case showed that in the processing of oysters for food there is a constant effort to eliminate shells and fragments thereof from the product. For this purpose many means and devices are used to reduce as nearly to a minimum as possible such shells and fragments in the product. The evidence, however, on behalf of both the government and the defense was that with present known means and devices it was impossible to free the product entirely from the presence of part shells and shell fragments. Moreover, it not only appeared, but it is a matter of common knowledge, that an oyster is a marine bivalve mollusk with a rough and an irregular shell wherein it develops and grows, and that, in the processing of the food product, it is necessary to remove this irregular, rough shell so far as that may be accomplished. The shells, therefore, are not artificially added for the purpose of growth or to aid in the processing operations.

The evidence on the part of the government was that parts of shell and shell fragments upon inspection were found in many of the cans taken from the article seized. Such parts of shell and fragments were exhibited at the trial.

There was evidence on behalf of the claimant that its processing operations. were in accord with the best manufacturing practice and there was even some testimony that the means employed by it for the elimination of shell fragments were superior to the means employed by other processors engaged in similar operations. The testimony on the part of the claimant further tended to show that within the Kansas City area over a period of ten years it had sold approximately 5 million cans of its product and that no complaint had ever been made concerning the presence of shell fragments. Claimant also, proved that over 50 million cans had been processed by it and distributed in its trade territory and that no complaints had ever been made of the presence of part shells or shell fragments.

It seems proper at this point to comment that in this case involving considerable testimony there was no substantial controversy as to the facts and practically no difference of opinion as to the law. There was a contention by the government that the shells as a deleterious substance were added to the product while being processed. There was no evidence to, support this contention.

1. The excerpt from the statute heretofore quoted contemplates that there may be of necessity food products. containing deleterious substances. No one who has had the experience of eating either fish or oysters is unfamiliar with the presence of bones in the fish (a deleterious substance) and fragments of shell in the oysters (also a deleterious substance),

The Congress, however, withdrew such foods from the adulterated class "if the quantity of such substance in such food does not ordinarily render it injurious to health."

The evidence on both sides was that by the greatest effort, and in the use of the most modern means and devices, shell fragments could not be entirely separated from an oyster food product. The government, in its brief, quite aptly and concisely stated its point by using the following language: "It is the character, not the quantity of this substance that controls its ability to injure."

This concession on the part of the government, properly made, upon the evidence removes the case immediately from that portion of the statute which says: "* * * such food shall not be considered adulterated under this clause if the quantity of such substance in such food does not ordinarily render it injurious to health."

Since it is the "character, not the quantity of this substance that controls its ability to injure", as stated by the government, then in the view that it is impossible to eliminate shell fragments in toto from the product, the use of oysters as a food must be entirely prohibited or it must be found that the presence of shell fragments is not a deleterious substance within the meaning of the law and must be tolerated to reject oyster products as a food is unthinkable. It would be as reasonable to reject fish because of the presence of bones. Even if a greater percentage of shells and shell fragments were found in claimant's product than in that of other processors, yet this fact, under the theory of the government, would not add to the deleterious nature of claimant's product. It should be stated, however, that there was no evidence that there was an excess of shell fragments in claimant's product over that of other processors. On the contrary, a preponderance of the evidence showed that the claimant's processing methods were superior.

2. It does not seem necessary to discuss other portions of said Section 342 invoked by the government. It is charged in the libel complaint that other provisions of the statute were violated by substituting shell fragments for oysters, and that shell fragments had been mixed or packed with the oyster product so as to reduce its quality. There was no testimony to support these averments and so as to make applicable those provisions of the law directed against such acts.

3. Counsel for both the government and the claimant, at the trial and in their briefs, discussed the question of the right to a tolerance regulation as provided by Section 346, Title 21 U.S.C.A. This provision is for tolerance of both poisonous and deleterious substances where the presence of such substance cannot be avoided. However, that section says: "(a) Any poisonous or deleterious substance added to any food, except where such substance is required in the production thereof or cannot be avoided by good manufacturing practice shall be deemed to be unsafe for purposes of the application of clause (2) of section 342 (a)."

Adverting to clause 2 of said section 342 (a), it reads as follows: "* * * or (2) if it [food] bears or contains any added poisonous or added deleterious substance which is unsafe within the meaning of section 346."

■ It will be seen at once that this provision does not apply where the deleterious substance inheres in the product and is not added. Further quoting from section 346, however, note this language: "* * * but when such substance is so required or cannot be so avoided, the Administrator shall promulgate regulations limiting the quantity therein or thereon to such extent as he finds necessary for the protection of public health."

Upon the concession made by the government in this case, even if the tolerance section could be construed to apply, it is not the quantity of the substance but its character "that controls its ability to injure."

4. Upon the evidence in the case it must be found that the presence of shell fragments in the article sought to be condemned does not ordinarily render it injurious to health.

■ Under the statute and upon the evidence the government is not authorized to condemn the article seized for the reason that the processed article does not offend against the food and drug law. The claimant, therefore, should have restored to it the articles seized and the libel should be dismissed. It will be so ordered.